IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

JASON S. WARREN,                        )
                                        )
              Petitioner,               )
                                        )
      v.                                )      Case No. 1:17-CV-00193-AGF
                                        )
JASON LEWIS,                            )
                                        )
              Respondent.               )

**MEMORANDUM AND ORDER**

      This matter is before the Court on the pro se petition of Missouri state prisoner

Jason S. Warren for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  Petitioner

was charged as a prior offender with the class C felony of second-degree assault, arising

out of an altercation at a strip club after which Petitioner ran over the strip club

manager's foot with his car.

      Following a jury trial held on January 17, 2014, with Petitioner representing

himself pro se, the jury found Petitioner guilty.  On March 25, 2014, the trial court

sentenced Petitioner to five years' imprisonment in the Missouri Department of

Corrections.[2]

---

[1]      Petitioner initially filed his petition in the U.S. District Court for the Western
District of Missouri.  On October 24, 2017, the case was transferred to this Court, which
is the proper court with jurisdiction over this habeas petition.

[2]      Petitioner was also sentenced to 120 days for speeding, to be served concurrently
with the five-year sentence.  Petitioner has not challenged that charge or sentence here.

Petitioner alleges four grounds for habeas relief: (1) the jury was biased, leading the jury to render a verdict against the weight of the evidence, thus violating Petitioner's due process rights; (2) the victim's testimony conflicted with that of an eyewitness as to the location of the victim in relation to Petitioner's car at the time of the assault; (3) the victim and eyewitness provided conflicting testimony regarding a photograph used during trial to determine Petitioner's route out of the parking lot in which the assault occurred; and (4) the State presented conflicting evidence as to whether the victim was wearing a tennis shoe or a boot at the time of the assault.  For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

**Trial**

The evidence at trial showed the following.[3]  In the early morning hours of April 21, 2013, Petitioner was inside the Pony, a strip club located in Poplar Bluff, Missouri. James Blackwell, the victim, was the general manager of the Pony and was working at the time Petitioner was present.

At some point during his shift, a customer approached Blackwell and stated that Petitioner was harassing the customer and the customer's girlfriend.  After this complaint, Petitioner again approached the customer and began arguing with the customer and the

---

[3]     A public defender was appointed to represent Petitioner when he was arraigned. However, a short time thereafter, Petitioner sought to represent himself pro se, and the trial court allowed the public defender to withdraw.  In this federal habeas petition, Petitioner does not challenge the trial court's decision allowing Petitioner to proceed pro se, and Petitioner does not assert he was incompetent to represent himself.

customer's girlfriend.  Blackwell approached the table to separate Petitioner from the other individuals, but when that proved ineffective, Blackwell told Petitioner "it was time to go."  Resp't's Ex. 5 at 92-93.  Blackwell then forcibly removed Petitioner from the Pony.  During his removal, Petitioner became belligerent, yelling that had just purchased beers and claiming that he was an undercover FBI agent.  Upon reaching the door, Petitioner became more aggressive and refused to leave without the beers he had ordered.

Due to Petitioner's refusal to cooperate and his increasingly aggressive behavior, Blackwell phoned the police.  While Blackwell was on the phone with the police, Petitioner shouted that he was with the mafia, that he was "going to kill [Blackwell]," and was "going to get a gun and . . . shoot [Blackwell]."  *Id.* at 94.  Petitioner then began walking toward his vehicle, and Blackwell followed "to make sure that [Petitioner] didn't have a gun."  *Id.* at 94-95.  As Petitioner was entering his vehicle, Blackwell told Petitioner that he could not leave because the police were on their way and would be arriving.  Petitioner continued to tell Blackwell that he was "getting [his] gun" and was "going to kill" Blackwell.  *Id.* at 95.

Petitioner then began to back out of the parking space slowly while continuing to yell that he was getting his gun and was going to come back and kill Blackwell.  *Id.* at 94-95.  Blackwell remained near Petitioner's vehicle, and Petitioner "gunned it," running over Blackwell's foot with his car hard enough to cause Blackwell's shoe to come off.[4]

---

[4]      As a result, Blackwell could barely walk, and when his shift ended, he went to the hospital and learned that his foot was broken in three places.  One of his toenails now permanently faces outward from his toe.  *See* Resp't's Ex. 5 at 102-03.

*Id.* at 95-96.  On cross-examination, Blackwell testified that he was on the driver's side of Petitioner's vehicle and that Petitioner was reversing the car when Petitioner ran over Blackwell's foot.  *Id.* at 113.

Edwin Edwards, a regular patron of the Pony and friend of Blackwell testified that he observed Petitioner "hit [Blackwell] so hard that his foot came out of his shoe."  *Id.* at 117.  Edwards testified that Petitioner hit Blackwell when Petitioner put the vehicle in drive but acknowledged that he did not actually see Petitioner run over Blackwell's foot because he (Edwards) was on the other side of the vehicle.  On cross-examination, Edwards testified that Blackwell was in front of Petitioner's vehicle but moved to the driver's side when Petitioner engaged the car and hit Blackwell.

After hitting Blackwell, Petitioner exited the parking lot onto the road and then made a U-turn and reentered the parking lot.  Petitioner then threatened to run over Blackwell and again threatened to kill him.  Blackwell believed that Petitioner was in fact going to hit him and took shelter near parked cars.  *Id.* at 98.  Petitioner then again exited the parking lot and headed toward Poplar Bluff.

Shortly thereafter, a Missouri State Highway Patrol Trooper stopped Petitioner in Poplar Bluff for speeding.  The trooper testified that Petitioner seemed agitative, was behaving erratic and combative, and threatened to kill the trooper and his family.  *Id.* at 132.

Following Petitioner's arrest, Deputy Wade Dare with the Butler County Sheriff's Office transported Petitioner to the Butler County Justice Center.  Deputy Dare testified that upon arriving at the Justice Center, Petitioner asked Deputy Dare if Dare had any

4

children and if he ever wanted to see them again, which Deputy Dare interpreted as a threat on his family's life.

Petitioner testified at trial in his own defense.  Petitioner denied seeing Blackwell beside his vehicle.  He testified that Blackwell was by the door of Pony when Petitioner backed out of the parking lot, and that Petitioner never returned to the parking lot after leaving the Pony.  Petitioner further testified that, after he left the parking lot, he was driving over the speed limit but met no police officers.  Petitioner further denied making any threats to the law enforcement officers.

As noted above, at the conclusion of the trial, the jury found Petitioner guilty of second-degree assault and speeding.  The trial court sentenced him to a total of five years' imprisonment.

**<u>Direct Appeal</u>**

On direct appeal (Resp't's Ex. 1), Petitioner, through appointed counsel, argued that the trial court erred by entering judgment against him because there was insufficient evidence to show that Petitioner acted recklessly in causing serious injury to Blackwell, as required to prove second-degree assault.  Specifically, Petitioner argued that the evidence showed that Blackwell was standing to the side of Petitioner's car, and Petitioner therefore did not disregard a substantial and unjustifiable risk when he backed his car out of the parking spot.

On September 11, 2015, the Missouri Court of Appeals issued its opinion affirming the judgment of conviction and sentence.  Resp't's Ex. 4.  The appellate court

held that a reasonable jury could have found beyond a reasonable doubt from the

evidence presented that Petitioner acted recklessly under Missouri law.

**State Postconviction Proceedings**

In his July 22, 2014, pro se motion for postconviction relief, Petitioner claimed

that: (1) the jury was biased because all jurors were from Butler County, where the

offense occurred, and Petitioner was from Wayne County; (2) the victim's testimony

conflicted with that of an eyewitness as to the location of the victim in relation to

Petitioner's car at the time of the assault; and (3) the victim and eyewitness provided

conflicting testimony regarding a photograph used during trial to determine Petitioner's

route out of the parking lot.[5]

On January 12, 2016, the motion court denied Petitioner's motion without an

evidentiary hearing.  As to Petitioner's jury bias claim, the motion court found that the

charge was required to be filed in Butler County, where the offense occurred, and that

Petitioner waived any right to a change of venue by failing to file a timely motion for

such a change.  The motion court further found no evidence of bias from a review of the

case file and noted that it is commonplace for a defendant to be tried in a county where he

does not live.  Resp't's Ex. 8 at 19.  As to Petitioner's second and third claims of various

contradictions among the witnesses' testimony, the motion court held that it was left to

---

[5]     Counsel for Petitioner was appointed on July 29, 2014.  On November 16, 2015,
counsel timely filed a statement in lieu of amended motion, which stated there were no
arguments or facts to be presented other than those Petitioner alleged in his pro se
motion.  Resp't's Ex. 8 at 12-13.

the jury as fact-finder to weigh the credibility of the witnesses and resolve any conflicts among their testimony.

On appeal from the denial of postconviction relief (Resp't's Ex. 6), Petitioner, through appointed counsel, Petitioner raised only one point.  Petitioner contended that the motion court erred in denying his motion because counsel was ineffective for failing to request a change of venue before withdrawing from the case.

On November 9, 2016, the Missouri Court of Appeals affirmed the motion court's judgment.  The appellate court held that the record conclusively refuted Petitioner's claim of bias and, therefore, the motion court did not clearly err in rejecting Petitioner's Rule 29.15 motion without an evidentiary hearing.

## Federal Habeas Petition

As noted above, in his federal habeas petition, Petitioner asserts that his constitutional rights were violated in that  (1) the jury was biased, leading the jury to render a verdict against the weight of the evidence, thus violating Petitioner's due process rights; (2) Blackwell's testimony conflicted with Edwards's as to where Blackwell was standing when Petitioner ran over Blackwell's foot; (3) Blackwell and Edwards provided conflicting testimony regarding a photograph used during trial to determine Petitioner's route out of the parking lot after the assault; and (4) the State presented conflicting evidence as to whether Blackwell was wearing a tennis shoe or a boot at the time of the assault.

In response, the State argues that each of Petitioner's claims is procedurally defaulted and is otherwise without merit.[6]

## **DISCUSSION**

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.  § 2254(a).  Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas relief cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the doctrine of procedural default, a federal court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is

---

[6]     At some point on or after August 29, 2018, and after Respondent filed his response to the instant habeas petition, Petitioner was released from imprisonment.  Upon review of the Missouri Department of Corrections Offender Search website, of which this Court takes judicial notice, Petitioner is no longer in custody. *See* https://web.mo.gov/doc/offSearchWeb/offenderInfoAction.do (last accessed Feb. 4, 2021).  However, because the parties have not briefed the issue and because Petitioner challenges his underlying conviction, which may have continuing collateral consequences, the Court will assume, without deciding, that the habeas petition is not moot. *See Spencer v. Kemna*, 523 U.S. 1, 7-9 (1998).

actually innocent, such that a miscarriage of justice would result by failing to consider the claim.  *E.g., Gordon v. Arkansas*, 823 F.3d 1188 (8th Cir. 2016).  Fairly presented means that the petitioner has properly raised the same factual grounds and legal theories in state court that he is attempting to raise in his federal habeas petition.  *Wemark v. Iowa,* 322 F.3d 1018, 1021 (8th Cir. 2003).

The Court concludes that each of Petitioner's claims has been procedurally defaulted and that Petitioner has failed to show cause and prejudice for the default.[7]  As the State argues, in his first claim that the jury was biased, leading to a verdict in violation of his due process rights for insufficient evidence, Petitioner seems to blend or combine claims raised in his direct appeal and postconviction motion.  In doing so, Petitioner is not presenting the same factual and legal theories as he presented them to the state courts.  "Presenting a claim to the state courts that is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement."  *Anderson v. Kelley*, 938 F.3d 949, 961 (8th Cir. 2019) (citation omitted).  Therefore, Claim One is procedurally defaulted and Petitioner does not allege—nor does the Court find—cause for the default.

Nor can Petitioner show prejudice arising from the default because Claim One is without merit.  Petitioner provided no evidence to the state courts or to this Court of any jury bias, and the state courts thus reasonably held that the record refuted Petitioner's claim of bias.  Claim One will be denied.

---

[7]     Petitioner does not assert and has not demonstrated that he is actually innocent of the crime charged.

As to Claims Two and Three, regarding inconsistent testimony, Petitioner raised such claims in his pro se postconviction motion.  However, after the motion court denied the claims as meritless, Petitioner failed to raise the claims on appeal.  Failing to raise a claim in a postconviction appeal is an abandonment of that claim.  *See Storey v. Roper*, 603 F.3d 507, 523 (8th Cir. 2010).  Petitioner again has not shown cause for the default.[8]

Claims Two and Three are likewise without merit.  As the motion court reasonably held, resolving conflicts in the testimony and weighing the evidence is the sole province of the jury.  And in light of the overwhelming evidence against Petitioner, a rational jury could have concluded that Petitioner was guilty of the crime charged, notwithstanding any minor inconsistencies in the testimony.  *See McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (holding that a federal habeas court reviewing an insufficiency-of-the-evidence claim and "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution") (citations omitted).  Accordingly, Claims Two and Three will be denied.

Petitioner's Claim Four, asserting conflicting evidence regarding the victim's shoe type, is also procedurally defaulted.  Petitioner did not raise this claim in his direct appeal or postconviction proceedings.  Nor has Petitioner asserted or shown cause to excuse the

---

[8]    Petitioner has not asserted that postconviction appellate counsel was ineffective for failing to preserve the claims, and, in any event, ineffective assistance of post-conviction appellate counsel has not been recognized as cause to excuse such procedural default.  *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

default or prejudice resulting therefrom.  Indeed, Petitioner has barely explained the basis

for this claim or why any conflict in the evidence as to the victim's shoe type would

undermine the overwhelming evidence of Petitioner's guilt.  Therefore, Claim Four will

be denied.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief.

Furthermore, the Court does not believe that reasonable jurists might find the Court's

assessment of the procedural or substantive issues presented in this case debatable or

wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C.

§ 2254(d)(2).  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (standard for

issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

(2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Jason S. Warren for a writ of

habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be

issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of February, 2021.

11